SO ORDERED.

SIGNED this 10th day of March, 2014.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

**Designated for publication**
# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| **BROOKE CORPORATION, et al.,** | **CASE NO. 08-22786** |
| | **(jointly administered)** |
| DEBTORS. | **CHAPTER 7** |
| **CHRISTOPHER J. REDMOND,** Chapter 7 Trustee of Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc. , | |
| PLAINTIFF, | |
| v. | **ADV. NO. 11-6236** |
| **CJD & ASSOCIATES, LLC, a/k/a DAVIDSON-BABCOCK,** | |
| DEFENDANT. | |

### MEMORANDUM OPINION AND ORDER DENYING
### DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER

Defendant CJD & Associates, LLC (CJD), moves under Bankruptcy Rule 7015 and Civil Rule 15(a)(2)[1] to file an amended answer denying the Plaintiff's allegation that CJD is an insider of Debtors, which CJD admitted in its previously filed answer.[2] Plaintiff opposes the motion primarily on the ground that the amendment would be futile since CJD satisfies the statutory definition of a per se insider.[3]  For the reasons examined below, the Court denies the motion.

## BACKGROUND FACTS.

The background facts are undisputed and not complex.  Brooke Corporation (Brooke Corp) and Brooke Capital Corporation (Brooke Capital) filed voluntary Chapter 11 petitions on October 28, 2008.  Prior to that date, CJD (a Kansas limited liability company) was a wholly-owned subsidiary of Brooke Brokerage Corporation, which, in turn, was wholly owned by Brooke Corp.  Brooke Capital was a majority-owned subsidiary of Brooke Corp.

On February 2, 2012, the Trustee filed his Amended Complaint against CJD.  It seeks to avoid preferential or fraudulent transfers made by Brooke Capital to CJD, and to

---

[1] Fed. R. Bankr. P. 7015 adopts Fed. R. Civ. P. 15 for adversary proceedings.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).  There is no objection to venue or jurisdiction over the parties.

[3] Plaintiff appears by John J. Cruciani and Michael D. Fielding of Husch Blackwell LLP.  CJD appears by Paul D. Sinclair, Jason L. Bush, and Brendan L. McPherson of Posinelli PC.

2

recover the value thereof.  Paragraph 8 of the Amended Complaint alleged:

> CJD & Associates, LLC d/b/a Davidson-Babcock ("CJD") is a Kansas limited liability company.  Prior to Debtors' bankruptcy filing on October 28, 2008, CJD was a wholly-owned subsidiary of Brooke Brokerage Corporation who, in turn, was wholly-owned by Debtor Brooke Corporation.  Thus, for all times relevant to this lawsuit, CJD was an "insider" (as that term is defined by 11 U.S.C. § 101(31)) of one of [sic] more of the Debtors because CJD constituted an "affiliate" (as that term is defined by 11 U.S.C. § 101(2)).[4]

CJD's answer to the Amended Complaint, filed on April 2, 2012, in response to

paragraph 8 stated,

> Defendant admits that prior to the Debtors' bankruptcy filing on October 28, 2008, CJD was a wholly-owned subsidiary of Brooke Brokerage Corporation who, in turn, was wholly-owned by Debtor Brooke Corporation.  As stated, Defendant denies that it is a Kansas limited liability company as it was administratively dissolved.  The remainder of the allegations in paragraph 8 consist of legal conclusions to which no response should be required.  To the extent a response is required, the remaining allegations are denied.[5]

  Paragraph 120 of the Trustee's Amended Complaint, included in Count I, which

seeks to recover preferential transfers, alleged, "At all times relevant to this matter,

Defendant was an insider of the Debtors."[6]  CJD's answer stated, "Defendants [sic]

admits paragraph 120 of the Complaint."[7]  None of the affirmative defenses raised by

---

[4] Doc. 5, 2, ¶ 8.

[5] Doc. 10, 2, ¶ 8.

[6] Doc. 5, 21, ¶ 120.

[7] Doc. 10, 7, ¶ 120.

CJD alleged that it was not an insider of any of Debtors.

CJD filed its motion for leave to file an amended answer on December 19, 2013. It proposes to amend its response to paragraph 8 by deleting the sentence, "The remainder of the allegations in paragraph 8 consist of legal conclusions to which no response should be required," and adding the following sentence: "Defendant denies that it is an 'insider' (as that term is defined by 11 U.S.C. § 101(31)) of one or more of the Debtors because CJD constituted an 'affiliate' as that term is defined by 11 U.S.C. §101(2)."[8] CJD also proposes to amend its response to the allegations of paragraph 120 of the Amended Complaint to read, "Defendant denies paragraph 120 of the Complaint."[9] The proposed amended answer also includes as an affirmative defense that CJD was not a insider of Debtors.

**DISCUSSION.**

**A.  The Applicable Standard.**

Civil Rule 15(a)(2), applicable to amendments other than those permitted as a matter of course, provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  But "[t]he liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases."[10]  In the Tenth Circuit, leave to amend

---

[8] Doc. 66-2, 2, ¶ 8.

[9] *Id.*, 7, ¶ 120.

[10] 6 Charles AlanWright, et al., *Federal Practice and Procedure*, § 1487 at 699 (3d ed. 2010).

may be refused when there is "'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'"[11]  The futility analysis determines whether the proposed "claim or defense . . . is legally insufficient on its face."[12]  "[I]f a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile."[13]

## B.  The Parties' Positions.

CJD argues that the Trustee is unable to show undue delay, prejudice, bad faith, or dilatory motive.  The case is in the early stages of litigation, with written discovery in progress and no depositions having been taken.  Further, according to CJD, the amendments are not futile since the Trustee's allegation that CJD is a statutory or per se insider fails because insider status, on which the Trustee relies, applies to corporations, but not to limited liability companies, such as CJD.

The Trustee first responds that leave should be refused because CJD delayed for over 21 months before requesting leave to amend to its answer and the Trustee would be unduly prejudiced by such amendment.  In addition, and as his primary objection, the Trustee argues that the amendment would be futile as a matter of law because CJD is a

---

[11] *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005) (*quoting Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[12] 6 Wright, *et al*., *Federal Practice and Procedure,* § 1487 at 733.

[13] *Id*. at 743 (*citing Bauchman ex rel. Bauchman v. West High School*, 132 F.3d 542 (10th Cir. 1997) and other cases).

statutory insider of Brooke Corp and Brooke Capital.[14]

**C.  The Court Rejects the Trustee's Contention that Leave Should Be Denied Because of Undue Delay or Undue Prejudice.**

Although over 21 months passed since CJD filed the answer which it now seeks to amend, undue delay is not measured by time alone.  The circumstances of the case must be considered.  This litigation has not progressed significantly.  If the defense to the insider allegation is allowed at this time, the course of the litigation will not be significantly different from what it would have been if CJD had denied insider status in its original answer.  For the same reason, the Trustee's contention that he would be unduly prejudiced by the amendment is unpersuasive.  It is true that allowing the defense would cause the Trustee to spend additional time and incur additional expense.  But CJD should not be bound by an admission because the other party relied upon it when the litigation was in its early stages.

**D.  The Court Finds that the Proposed Amendment Would Be Futile.**

The parties agree that the motion for leave should be denied if the defense to be added by the amended answer could not survive a motion for summary judgment.  In support of his futility contention, the Trustee argues that CJD is a per se insider of Brooke Corp under § 101(31)(E) because it constitutes an "affiliate" under § 101(2)(B) and (C).  CJD responds that because it is a limited liability company (LLC) rather than a

---

[14] The Trustee also objected that CJD's addition of an affirmative defense denying insider status would be futile, since the assertion that a defendant is not an "insider" is not an affirmative defense but rather simply an attack on a prima facie element of the Trustee's case.  Doc. 67, 11-12.  In its rely brief, CJD agreed with this position and no longer seeks leave for this particular amendment.  Doc. 68, 9.

corporation, it is not an "affiliate" and therefore not an "insider." The legal issue presented by the Trustee's opposition to the motion is therefore whether CJD is a corporation for purposes of the definition of "affiliate," and therefore an "insider" of Brooke Corp and Brooke Capital.

**1. CJD is an "affiliate" of Brooke Corp under § 101(2)(B), and therefore an "insider" of Debtors Brooke Corp and Brooke Capital under § 101(31)(E).**

**a. Arguments and authorities supporting the Trustee's position.**

Section 101(31) states the term "insider" "includes" those categories of persons enumerated in the definition, such as a director, officer, or other person in control of a corporate debtor, and a relative or general partner of an individual debtor. Courts agree that the use of the word "includes" in the definition indicates that Congress did not intend for the statutory list to be exclusive, and that there are two types of insiders: (1) those entities specifically mentioned in the definition, and (2) those not listed but who have a sufficiently close relationship with the debtor that their conduct is made subject to close scrutiny.[15] The first category constitutes statutory or per se insiders, those "'whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor.'"[16] The second category is present when it is shown "that the person or entity in fact had a relationship with the debtor that

---

[15] *Rupp v. United Security Bank (In re Kunz)*, 489 F.3d 1072, 1078-79 (10th Cir. 2007) (*quoting Miller Avenue Prof'l & Promotional Servs. v. Brady (In re Enterprise Acquisition Partners)*, 319 B.R. 626, 631 (9th Cir. BAP 2004)).

[16] *Id.*, 489 F.3d at 1079 (*quoting Enterprise Acquisition Partners*, 319 B.R. at 631).

7

was sufficiently close that the two were not dealing at arm's length."[17]

Even though an LLC controlled by a corporate debtor is not included in the list of persons in § 101(31)(B), the Trustee contends that CJD is a per se insider of Brooke Corp and Brooke Capital under § 101(31)(E), which defines "insider" to include an "affiliate, or insider of an affiliate as if such affiliate were the debtor." "Affiliate" is defined by § 101(2)(B) to mean a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor." The Trustee contends, and CJD does not dispute, that if CJD were a corporation, under these definitions, it would be an insider of Debtors Brooke Corp and Brooke Capital. This is because before Debtors' bankruptcies, CJD was a wholly-owned subsidiary of Brooke Brokerage Corporation (Brooke Brokerage) and Brooke Brokerage was majority owned by Brooke Corp. Thus, if it were a corporation, CJD would have been an "affiliate" of Brooke Corp, since 100% of its securities would have been indirectly owned or controlled by Brooke Corp because of Brooke Corp's majority ownership of Brooke Brokerage. Moreover, since Brooke Capital was a majority-owned subsidiary of Brooke Corp, Brooke Capital was an "affiliate" of Brooke Corp under § 101(2)(B), and CJD (as a corporate "insider" of Brooke Corp) would also have been an "affiliate" and therefore a per se insider of Brooke Capital under § 101(31)(E).

The Trustee further contends, but CJD disputes, that although CJD was in fact a

---

[17] *Id.*, 489 F.3d at 1079.

8

limited liability company, it was nevertheless a "corporation" as defined by § 101(9) for

purposes of the definition of "affiliate." Section 101(9) provides:

> The term "corporation" —
>> (A) includes —
>>> (i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;
>>> (ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
>>> (iii) joint-stock company;
>>> (iv) unincorporated company or association; or
>>> (v) business trust; but
>> (B) does not include limited partnership.

Although LLCs are not included in the enumerated entities, this omission does not

preclude finding that LLCs are "corporations" for purposes of the Code. The term

"corporation" only "includes" the entities enumerated in the statute. Under the Code's

rules of construction as stated in § 102(3), the terms "'include' and 'including' are not

limiting." The clear meaning of the definition of "corporation" is that entities not

enumerated in the statute may also be considered "corporations."

Although the construction of the definition of "corporation" is a matter of federal

law, applicable state law defines the powers and privileges of the entity. Under Kansas

law, an LLC is a business organization "which offers the possibility of combining the

limitation on individual liability normally associated with the corporate form with the

conduit tax treatment of items of income, gain, loss, deduction and credit normally

9

associated with the partnership form."[18]  Like a corporation, a "limited-liability company may own property in its own name, and members have no ownership interest in specific limited-liability company property."[19]  Like a corporation, an LLC's "liabilities in tort are solely those of the LLC and . . . no member or manager may be liable solely based on their status as a member or manager."[20]  Members of LLCs, like stockholders of corporations, are authorized to bring derivative suits.[21]  The Court concludes that a Kansas LLC has powers and privileges that a corporation, but not an individual or partnership, possesses.

In the bankruptcy context, an LLC has been found to fit within the definition of a "corporation" for purposes other than the definition of an "affiliate."  There is no question that an LLC may file a petition under Title 11.[22]  As one court has stated, this is because "an LLC, by virtue of its structure and limited liability features, fits comfortably within the Bankruptcy Code's definition of 'corporation' and, hence, is a 'person' eligible to be a

---

[18] Edwin W. Hecker Jr., *Limited Liability Companies in Kansas*, 63 J. Kan. B. Ass'n 40, 40 (1994).

[19] *In re App. for Tax Exemption of Kouri Place, L.L.C.*, 44 Kan. App. 2d 467, 470, 239 P.3d 96, 99 (2010) (*citing* K.S.A. 17-76,111).

[20] *University of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1239 (D. Kan. 2008).

[21] *Halley v. Barnabe*, 271 Kan. 652, 661-62, 24 P.3d 140, 146-47 (2001).

[22] *See In re Midpoint Development, L.L.C.*, 466 F.3d 1201, 1203-07 (10th Cir. 2006) (upholding dismissal of Oklahoma LLC's Chapter 11 petition because under Oklahoma law, debtor ceased to exist when it filed articles of dissolution several months prior to filing bankruptcy); *In re Lovell's Amer. Car Care, LLC*, 438 B.R. 355 (table), *unpub. op. available at* 2010 WL 2769056, *3-6 (10th Cir. BAP 2010) (Wyoming LLC eligible to file bankruptcy when certificate of dissolution had not been filed before date of filing of bankruptcy petition).

debtor."[23]  An LLC is considered a "corporation" under Bankruptcy Rule 7007.1, which requires a corporation that is a party to an adversary proceeding to file an ownership statement.[24]

Several courts considering per se insider status have held that LLCs fit within the definition of a "corporation."  These include *Longview Aluminum, L.L.C.*,[25] a decision by the Seventh Circuit Court of Appeals.  In that case, the Chapter 11 trustee brought an adversary proceeding to set aside, as preferential transfers, prepetition payments that the debtor LLC had made to one of its managing members, who was alleged to be an insider. The court noted that "[t]he Bankruptcy Code's definition of a corporation includes unincorporated limited liability companies."[26]  The court then analogized the position of a member of an LLC to the director of a corporation and concluded that "a member of an LLC can be a statutory insider within the meaning of 11 U.S.C. § 101(31)(B)."[27]

In *Barman*,[28] the court sustained the Trustee's objection to discharge of the debtors, Harold and Evelyn Barman, on the ground that they had refused to obey a court

---

[23] *Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717 (9th Cir. BAP 2004).  Section 109 provides that only certain "persons" may be debtors under Chapters 7 and 11.  "The term 'person' includes individual, partnership and corporation."  11 U.S.C. § 101(41).

[24] See Fed. R. Bankr. P. 7007.1, Advisory Committee Note (2003).

[25] *In re Longview Aluminum, L.L.C.*, 657 F.3d 507 (7th Cir. 2011).

[26] *Id*. at 509, n.1.

[27] *Id*. at 510.

[28] *Solomon v. Barman (In re Barman)*, 237 B.R. 342 (Bankr. E.D. Mich. 1999).

11

order in another bankruptcy case concerning an insider, BHB Enterprises, LLC (BHB),

organized under South Carolina law.  Harold Barman was a member of BHB.  The

debtors admitted that they were insiders of BHB, but denied that BHB was an insider of

theirs.  The court examined § 101(31), which provides that an "insider *includes* [,] . . . if

the debtor is an individual[,] . . . [a] corporation of which the debtor is a director, officer,

or person in control . . . [and an] affiliate, or insider of an affiliate as if such affiliate were

the debtor."[29]  It also examined § 101(2)(B), which defines "affiliate" to mean a

"corporation 20 percent or more of whose outstanding voting securities are directly or

indirectly owned, controlled, or held with power to vote, by the debtor."  It then

concluded, based upon an examination of the characteristics of limited liability companies

under South Carolina law, "that a limited liability company, such as BHB, is sufficiently

analogous to a corporation" for purposes of determining insider status.[30]  The court held

that "BHB is an 'affiliate' (and thus an insider) of Harold Barman because he owned, or

directly or indirectly controlled, one third of the voting rights in BHB [and that] BHB is

also within the statutory definition of an 'insider' of Harold Barman because he is one of

its three members and thus holds a position that is analogous to that of a 'director, officer

or person in control' of BHB."[31]

---

[29] *Id*. at 348 (*quoting* 11 U.S.C. § 101(31)(A)(iv) and (E)) (emphasis added by the court).

[30] *Id*. at 348.

[31] *Id*. at 349.

In *Lull*,[32] a 2009 decision, the court relied on *KRSM Properties* and *Barman* to hold that a member-managed Hawaii LLC should be treated as a corporation for purposes of the definition of "insider." In that case, the debtor and Zapara were each 50% owners of interests in JWL, LLC. More than 90 days prepetition, the debtor made transfers to Zapara which the trustee sought to recover as preferential transfers. The court held:

> Under the *Barman* reasoning, and because an LLC is within the Code's definition of "corporation" under § 101(9)(A), JWL may be treated like a corporation for the purposes of insider analysis, and under 11 U.S.C. § 101(31)(A)(iv) its insiders include "director(s), officer(s) or person(s) in control."
>
> . . . As the only members of an LLC, Debtor and Zapara had co-equal rights in the management and conduct of the company's business as a matter of law. . . . JWL is an "affiliate" of Debtor because Debtor controlled or held fifty percent of the "voting securities" of JWL (and because an LLC fits within the Code's definition of "corporation" under § 101(9)(A)). Zapara is also an "insider" of JWL and thus an insider [of] the debtor under § 101(31)(E) because she also controlled or held 50% of the "voting securities" of JWL.[33]

Very recently, the *Parks*[34] court thoroughly examined the question of whether an LLC, organized under Washington law, was a "corporation" for purposes of the definition of "insider." The court began its analysis with the principles of statutory construction. It noted that the definition of "corporation" uses the expansive word "includes," and was

---

[32] *Kotoshirodo v. Zapara (In re Lull)*, 2009 WL 3853210 (Bankr. D. Haw. Nov. 17, 2009).

[33] *Id.* at *4.

[34] *Sherron Assocs. Loan Fund XXI (Lacey) L.L.C. v. Thomas (In re Parks)*, 503 B.R. 820 (Bank. W.D. Wash. 2013).

"persuaded that 'corporation' as used in § 101(9)(A) is not limited to those entities specifically itemized in statute."[35]  It found this approach to be consistent with that taken by the Seventh Circuit in *Longview Aluminum*, discussed above, when it held that "a member of an L.L.C. was equivalent in relationship to a director of a corporation, thereby expanding the definition of 'director' in § 101(31) [defining insider]  to include other L.L.C. members."[36]  Next, the court applied the "presumption that equivalent words have equivalent meaning when repeated in same statute,"[37] and observed that in the non-insider context it has been "found that an L.L.C. 'fits comfortably within the Bankruptcy Code's definition of "corporation."'"[38]  The state law treatment of LLCs further supported the court's conclusion that an LLC was included in the broad definition of "corporation" for purposes of the definition of "insider."[39]

### b.  Authorities supporting CJD's position.

In support of it motion to amend, CJD anticipates the Trustee's argument that the amendment would be futile and asserts that the "problem with the Trustee's allegations as to the insider status of CJD is that CJD was not a corporation, but a limited liability

---

[35] *Id*. at 827-28.

[36] *Id*. at 828.

[37] *Id*. (*citing Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998)).

[38] *Id*. (*quoting Gilliam v. Speier (In re KRSM Props., L.L.C.)*, 318 B.R. 712, 717 (9th Cir. BAP 2004) (considering whether LLC was a "person" for purposes of the Code and therefore eligible to file a petition) and *also citing* Fed. R. Bankr. P. 7007.1, Advisory Committee Note (2003)).

[39] *Id*. at 828-29.

14

company."[40]  It then discusses several cases to support its argument.

The first case is *Enterprise Acquisition Partners*, a decision of the Ninth Circuit BAP, which did not concern the status of an LLC, but observed that "[p]articularly in light of the conclusive presumption of preferential treatment that arises from a determination that an entity is a per se insider, there is no justification for expanding the definition of per se insider beyond what is plainly contained in the statute."[41]  CJD then relies upon several cases which apply the *Enterprise* caution.

The first cited case relying on *Enterprise* is *Weddle*,[42] in which the Chapter 7 trustee brought an adversary action to avoid the recording of a judgment against the individual debtors that was done more than 90 days prepetition by a limited liability company controlled by the father of one of the debtors.  The debtors were members of the LLC and each held a 5% ownership interest in 100 common units.  Because neither membership in, nor management or control of an LLC is specifically addressed in the definition of "insider" in § 101(31), the plaintiff, relying on *Barman*,  argued that "insider" status should be found because the debtors were persons in control of the LLC, and the "insider" definition concerning "corporations" found in § 101(31)(A)(iv) applied.[43]  The court cited the *Enterprise* instruction not to enlarge the list of per se

---

[40] Doc. 66, 4.

[41] *Enterprise Acquisition Partners*, 319 B.R. at 632.

[42] *Elsaesser v. Cougar Crest Lodge, L.L.C. (In re Weddle)*, 353 B.R. 892 (Bankr. D. Idaho 2006).

[43] *Id*. at 897.

15

insiders beyond those in the statute, and held that "[s]ince a[n] LLC of which debtor is a member, director, officer or person in control is not among the list of per se, statutory insiders, Plaintiff's argument fails."[44]

Next, CJD relies upon *Lull*,[45] a 2008 bankruptcy decision from the District of Hawaii. In this preference action, the bankruptcy trustee contended that Tipaldi had received an avoidable transfer from debtor Lull more than 90 days prepetition. Both Lull and Tipaldi were members and managers of Tower Creek, LLC. The trustee (like the Plaintiff-Trustee in this case) contended that Tipaldi was a per se insider of the debtor because § 101(31)(E) defines "insider" to include an "affiliate, or insider of an affiliate as if such affiliate were the debtor," and the LLC was an "affiliate" of the debtor under the corporate portion of § 101(2)(B). Although acknowledging that some courts have found that an LLC is "sufficiently analogous to a corporation to permit a court to apply the corporate provisions of § 101(31) to a LLC,"[46] the court noted that the Ninth Circuit had not decided the question, but the Ninth Circuit BAP had instructed that the definitions should not be expanded. The court therefore concluded that the "*Weddle* court's holding that a limited liability company is not a *per se* insider of a debtor who is a member of the company is the more sound result."[47]

---

[44] *Id*.

[45] *Kotoshirodo v. Dorland and Assocs., Inc. (In re Lull)*, 2008 WL 3895561 (Bankr. D. Haw. 2008).

[46] *Id*. at *8.

[47] *Id*. at *9.

16

In its reply brief, CJD argues that the Tenth Circuit would adopt its argument over that of the Trustee. The case relied on is *Kunz*,[48] where the court held that the debtor's title of "director emeritus" of a bank did not make him a "director" of the bank or a per se insider of the debtor, for the purpose of avoidance of allegedly preferential transfers from the debtor to the bank. The court determined that the meaning of "director" as used in the definition of "insider" is "a person who is a member of the governing board of the corporation and participates in corporate governance."[49] This meaning was found to contrast with that of "emeritus," which refers to a person "'holding after retirement . . . an honorary title corresponding to that held last during active service'" or "'retired from an office or profession.'"[50] The court therefore held that the debtor was not an "insider" of the bank, and that a director emeritus was not equivalent to a director for the purposes of insider status. The court rejected the trustee's argument that the term "director" must be construed to included any kind of director, which would equate a managing director with a former director. The court's construction was found to be more consistent with the "overall understanding of the function of the statutory definition of 'insider' — as well as true to the actual language."[51] According to CJD, this analysis demonstrates that "the Tenth Circuit understands, like the *Enterprise* line of cases, that an expansion of the

---

[48] *In re Kunz*, 489 F.3d 1072.

[49] *Id*. at 1077.

[50] *Id*. at 1078 (*quoting* Webster's Third New Internat'l Dictionary 741).

[51] *Id*. at 1079.

definition of an insider beyond what is plainly stated in the statute is unnecessary."[52]

> ### c. The Court finds the Trustee's arguments and authorities to be more persuasive than CJD's.

The Court finds that the Trustee's position is fully supported by the plain meaning of the applicable definitions. The cases cited by the Trustee holding that an LLC is within the statutory definition of a "corporation" for purposes of the definition of "affiliate" are persuasive. The Code defines a "corporation" to include an "association having a power or privilege that a private corporation, but not an individual or a partnership, possesses."[53] A Kansas LLC has such powers and privileges, and CJD does not argue to the contrary.

Once it is determined that a Kansas LLC fits within the Code's definition of "corporation," CJD's status as an "insider" of both Debtors Brooke Corp and Brooke Capital follows from the definitions of "affiliate" and "insider." An "affiliate" is defined to mean a corporation "20 percent or more of whose outstanding voting securities are directly or indirectly owned [or] controlled . . . by the debtor." Debtor Brooke Corp owned Brooke Brokerage Corporation, which in turn owned CJD. Brooke Corp therefore indirectly controlled CJD, making CJD an "affiliate" of Brooke Corp, and therefore an "insider" of Brooke Corp since "insider" is defined by § 101(31)(e) to include an "affiliate." Further, Debtor Brooke Capital was a majority-owned subsidiary of Brooke

---

[52] Doc. 68, at 7.

[53] 11 U.S.C. § 101(9).

Corp and therefore an "affiliate" of Brooke Corp under § 101(2)(B). Since CJD is an "insider" of Brooke Corp, which is an "affiliate" of Brooke Capital, CJD also is an "insider" of Brooke Capital under § 101(31)(E).

Contrary to the *Enterprise* line of cases relied upon by CJD, the foregoing analysis is not an expansion of the definition of per se insider by analogizing an LLC to a corporation; it is a straightforward application of the Code definitions. The *Weddle* decision on which CJD relies characterized the plaintiff's argument in support of insider status as requesting the court to "apply by analogy the insider definition concerning corporations found in § 101(31)(A)(iv)."[54] Rather than examining whether the LLC satisfied the Code's definition of "corporation," which is the linchpin of the Trustee's argument in this case, the *Weddle* court followed the Ninth Circuit BAP's admonition not to expand the definition of per se insider. Further, the 2008 *Lull* decision, also relied upon by CJD and which followed *Weddle*, arose in the same bankruptcy proceeding and was decided by the same judge as the 2009 *Lull* decision which supports the Trustee's argument, a development that casts doubt upon that judge's earlier analysis.

The Court finds the Trustee's analysis to be consistent with the Tenth Circuit's decision in *Kunz*, which, contrary to CJD's implication, did not adopt the *Enterprise* directive to limit per se insiders to those enumerated in § 101(31) without regard to the Code's statutory definition of "corporation." Rather *Kunz* was decided, as is this case,

---

[54] *Weddle*, 353 B.R. at 897.

upon the plain meaning of the statutory definitions.  As observed by the *Kunz* court, "it was the legislative intent that a person with a relationship designated in the statute be treated as an insider because of the high potential for control inherent in those relationships."[55]  For purposes of per se insider status in preferential transfer litigation, this Court sees no relevant distinction between a corporate and an LLC subsidiary of a debtor; there is an equally high potential for control inherent in both relationships.  If the presumption of preferential treatment applies to a corporation, it should also apply to a similarly-situated LLC.

**2. CJD is not a per se insider of Brooke Corp under § 101(31)(E) because of the operating agreement between CJD and Brooke Brokerage.**

In addition to the foregoing argument, the Trustee argues that CJD is an insider of Brooke Corp based upon the allegation that CJD was being operated under an operating agreement with Brooke Brokerage.[56]  Section 101(2)(C) defines an "affiliate" an a "person whose business is operated under a lease or operating agreement by a debtor."  The Court agrees with the Trustee that an LLC is a "person" for purposes of this

---

[55] *Kunz*, 489 F.3d at 1079.

[56] A Certificate of Amendment and Restatement of the Operating Agreement of CJD & Associates, L.L.C. dated December 31, 2004 (Doc. 67-1) is included in the record with a supporting affidavit of the Trustee (Doc. 67-2).  The Operating Agreement provides that the business and affairs of the company shall be managed by its manager, which for purposes of the agreement is referred to as the board of directors.  Doc. 67-1, 1.  The directors are elected by the members, (Doc. 67-1, 7), and Brooke Brokerage Corporation is named as holding 100% of the membership interests (Doc. 67-1, 5).  CJD's objection to the Trustee's arguments premised upon the Operating Agreement relies in part upon the fact that there is no evidence that the Operating Agreement was in effect when the transfers in issue were made.  Although the Court agrees there is no such evidence, it prefers to address the Trustee's arguments based upon the construction of the Bankruptcy Code, rather than the fact-question of the effective dates of the Operating Agreement.

20

definition.  The Code defines "person" to include an "individual, partnership, and corporation."[57]  Although an LLC is not included in the list, courts find an LLC is a "person" for purposes of determining its eligibility under § 109 to file a petition.[58]

But the Court finds that the operating agreement relied upon by the Trustee does not satisfy the "affiliate" definition.  To qualify as the basis for "affiliate" status, the operating agreement must be with a debtor; here the operating agreement was with Brooke Brokerage, a non-debtor.  To overcome this deficiency, the Trustee argues that the "debtor" means Brooke Brokerage because "[i]n applying § 101(31)(E) [which defines "insider" to mean "affiliate, or insider of an affiliate as if such affiliate were the debtor"] to § 101(2)(C) [defining "affiliate" to mean a "person whose business is operated under a lease or an operating agreement by a debtor"], the term 'debtor' means Brooke Brokerage because it is 'as if' Brooke Brokerage (i.e., "such affiliate') 'were the debtor.'"[59]  But this argument misconstrues § 101(31)(E), which provides for two routes to "insider" status:  (1) being an "affiliate" of the debtor; and (2) being an "insider" of an "affiliate" of the debtor, as if such affiliate were the debtor.  For purposes of the first route, CJD is not an "affiliate" of a debtor based upon the operating agreement with non-debtor Brooke Brokerage.  For purposes of the second route, there is no Bankruptcy Code definition providing that CJD is an "insider" of Brooke Brokerage, an affiliate of Brooke

_____

[57] 11 U.S.C. § 101(41).

[58] *See* note 22.

[59] Doc. 67, at 10.

21

Corp, because of the operating agreement. Under the Code definitions, an "insider" of an "affiliate" of the debtor is treated the same as an "insider" of the debtor. This does not mean that the "affiliate" is a debtor. The Trustee's argument misconstrues the phrase "as if such affiliate were the debtor" in the definition of "insider." The Court therefore finds that CJD cannot be an "affiliate" of Brooke Corp under § 101(2)(C) based upon an operating agreement with Brooke Brokerage.

**CONCLUSION.**

For the foregoing reasons, the Court denies CJD's motion to file an amended answer denying the Trustee's allegations that CJD is a per se insider of Debtors Brooke Corp and Brooke Capital. The proposed amendment would be futile because, under the uncontroverted facts as to the relationship of CJD with the Brooke entities, CJD is a statutory or pe se insider.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this proceeding.

**IT IS SO ORDERED.**

# # #

22